UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PRIMARQUE PRODUCTS CO., INC., | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | |
| v. | ) | CIVIL ACTION |
|  | ) | NO. 15-30067-TSH |
| WILLIAMS WEST & WITT'S | ) | |
| PRODUCTS COMPANY d/b/a | ) | |
| INTEGRATIVE FLAVORS, | ) | |
| Defendant. | ) | |
|  | ) | |

**ORDER**

**October 18, 2016**

Hennessy, M.J.

By Order of Reference dated September 2, 2016 (Docket #47), and pursuant to 28 U.S.C. § 636(b)(1)(A), this matter was referred to me for a ruling on Plaintiff Primarque Products' Motion to Compel Answers to Interrogatories and Production of Documents (Docket #41). Defendant Williams West & Witt's Products Company ("WWW") filed an opposition to the motion, which includes a request for attorney's fees. (Docket #45). A motion hearing was held on October 11, 2016. (Docket #53). This matter is now ripe for adjudication. For the reasons that follow, the Motion to Compel Discovery is GRANTED IN PART and DENIED IN PART as is set forth below.

I.  BACKGROUND

Plaintiff Primarque and Defendant WWW had a business relationship for over thirty years. (Docket #18 at ¶ 6). Pursuant to the business arrangement, WWW manufactured soup base

1

products and Primarque was the exclusive distributor of WWW's soup products throughout New England.  (Id. at ¶ 7).  Primarque asserts that it had an agreement with WWW whereby (1) WWW was required to give Primarque ninety days' notice before terminating the business relationship, and (2) WWW would not solicit any business from Primarque's customers directly.  (Id. at ¶¶ 10, 13).  The customers to whom Primarque delivered WWW's soup products are referred to as "drop-ship" customers.

In or about May of 2014, Joanne Steiger became a sales representative for WWW, and around that time the business relationship began to deteriorate.  (Id. at ¶¶ 15-16).  Primarque asserts that Steiger became "unusually combative, hostile and antagonistic in her communications with Primarque, marking what appeared to be a personal vendetta against the owner of Primarque," and that Steiger threatened to solicit business from Primarque's customers directly, in contravention of their business agreement.  (Id. at ¶¶ 16-17).  Primarque outlines some examples of Steiger's alleged hostility, including an instance where she closed an email by saying, "Please contact me if you have any questions.  Although I do not look forward to your reply . . . ."  (Docket #41 at 3-4).  Unrelated to the issues with Steiger, Primarque contacted WWW's Director of Regulatory Compliance with a quality control concern sometime around October of 2014.  (Docket #18 at ¶¶ 18-19).  Primarque contends that Steiger was "infuriated" when she learned that Primarque had contacted another officer of WWW.  (Id. at ¶ 20).

By letter dated March 12, 2015, and without advanced notice, WWW terminated its business relationship with Primarque.  (Id. at ¶ 21; Docket #45-1).  Primarque contends that on the same day as the termination notice, WWW began to directly solicit business from Primarque's customers.  (Docket #18 at ¶ 23; Docket #41 at 4).  As a result of the termination, Primarque was

unable to obtain soup base products for a number of its customers, and it asserts that some of those former customers now obtain soup products from WWW directly.  (Docket #41 at 4).

On May 19, 2015, Primarque filed an amended complaint against WWW, asserting claims of breach of contract, promissory estoppel, and intentional interference with business relations, among other things.  (Docket #18).  On January 19, 2016, WWW filed its answer and asserted counterclaims for (1) breach of contract for goods delivered and (2) conversion, based on Primarque's alleged failure to pay for twelve deliveries totaling $97,843.22.  (Docket #31-1 through #31-12).

Primarque and WWW issued written discovery on May 13, 2016, and May 16, 2016, respectively.  (Docket #45 at 9).  On June 24, 2016, WWW served its Objections and Responses to Primarque's First Request for Production of Documents, and on June 27, 2016, WWW served its Objections and Answers to Primarque's First Set of Interrogatories.  (Docket #45 at 9-10).

Primarque's discovery requests can be separated into three categories: discovering relating to WWW's: (1) sales to Primarque's former drop-ship customers, including Interrogatory No. 18 and Document Request Nos. 9, 15, and 19; (2) national sales and profit records, including Document Request No. 18; and (3) alleged solicitation breaches, including Interrogatory No. 17, and Document Request Nos. 10 and 23.  The crux of this discovery dispute implicates the following question: What is the proper time period after the termination of the alleged contract for which WWW is required to disclose certain data and documents.

II.     STANDARD

The scope of discovery generally extends to:

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

3

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[1]

Fed. R. Civ. P. 26(b)(1). If an objection is raised as to the relevancy of discovery, the court may "become involved to determine whether the discovery is relevant to the claims or defenses." In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26(b)(1)). In this regard, Rule 26(b)(1) "vests the trial judge with broad discretion to tailor discovery narrowly." See Cutter v. HealthMarkets, Inc., No. 10-11488-JLT, 2011 U.S. Dist. LEXIS 13593, at *6 (D. Mass. Feb. 10, 2011) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

III.     ANALYSIS

With regard to the first category of discovery requests—that is, sales to former drop-ship customers—Primarque asserts that WWW should be required to produce responsive data and documents until June 30, 2016 because that time period provides "a truer picture of the commercial advantage or disadvantage of WWW's termination action" on March 12, 2015, and because the sale of soup base products "has seasonal ebbs and flows." (Docket #41 at 11). WWW, on the other hand, has agreed to produce the relevant information and documents only until June 12, 2015—that is, ninety days after the termination of the contract. (Docket #41 at 7). WWW contends that the scope of discovery is generally limited to ninety days after the contract was terminated because "Primarque would not have any claim to distributor profits after the 90-day notice period expired." (Docket #45 at 2).

---

[1] The citation is to Federal Rule of Civil Procedure 26(b) as amended on December 1, 2015. The Supreme Court has ordered that "the revised rules 'shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending.'" Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 U.S. Dist. LEXIS 167947, at *5 n.1 (M.D. Pa. Dec. 16, 2015) (quoting Letter of Transmittal to Congress, April 29, 2015).

At the hearing on October 11, 2016, Primarque's counsel represented that if the parties could reach a stipulation as to damages for lost profits, then Primarque would no longer seek the information relative to the first category of requests.

In order to allow the parties the opportunity to address the potential stipulation, which this Court understands would state in substance what the Plaintiff's distribution profits would be per annum in the event that Plaintiff prevails on the merits, Plaintiff's motion with respect to Interrogatory No. 18 and Document Request Nos. 9, 15, and 19 is DENIED WITHOUT PREJUDICE.[2]

With regard to the second category—national sales data—the dispute concerns Document Request No. 18, which seeks "all monthly, quarterly or annual sales reports" from 2012 to present. (Docket #41 at 10). First, WWW contends that national sales data is irrelevant, among other things, and therefore the request should be limited to data relating to Primarque's former customers only. (Id.). Second, WWW asserts that, in any event, the information disclosed should not go beyond June 12, 2015, or ninety days after the termination of the contract. (Id.).

Primarque contends that general sales information is relevant to its claim for tortious interference with a business relationship because one of the elements of that tort is that the defendant's interference be improper in motive or means. See Car v. XL Ins., 754 F. Supp. 2d 230, 233-34 (D. Mass. 2010). To that end, Primarque asserts that "[i]f . . . WWW's post-March 12, 2015 sales were down overall, as well as in New England, th[e]n that evidence would tend to show there was no commercial advantage to WWW's decision to terminate its distribution agreement with Primarque." (Docket #41 at 11).

---

[2] In the event that the parties are unable to reach an agreement on a stipulation, the parties are instructed to notify the Court by way of a very brief motion renewing the papers previously filed with the Court. Should the parties wish to be heard on the matter they may appear by telephone.

Although the Court finds creative the theory that WWW's alleged improper motive is evidenced by adverse financial consequences stemming from the termination, the fact remains that Primarque simply played no role in WWW's sales outside of New England. Additionally, Primarque's counsel itself stressed at the hearing that soup products sales are highly dynamic from year-to-year. Therefore, national sales data, encompassing myriad factors across the board, are highly attenuated. I find that the Plaintiff has failed to demonstrate that, pursuant to Rule 26, the national sales data sought are relevant and proportional to the needs of the case. Accordingly, Plaintiff's motion with respect to Document Request No. 18 is DENIED.

Finally, as to the third category—solicitation breaches—another dispute concerning the appropriate end-date of discovery exists for the following: Interrogatory No. 17 and Document Requests Nos. 10 and 23.

WWW has agreed to produce responsive information and documentation until June 12, 2015. Primarque, however, contends that the end date should be December 31, 2015 as to Interrogatory No. 17 and Document Request No. 10, and that the end date should be June 30, 2016 for Document Request No. 26. (Docket #41 at 11-13). Primarque argues that the no-solicitation agreement was indefinite, and therefore the ninety-day notice period is not controlling. (Docket #41 at 13).

Primarque's motion with respect to Interrogatory No. 17 and Document Requests Nos. 10 and 23 is GRANTED with the following modifications. Primarque is first required to identify any and all drop-ship customers for which it seeks discovery relative to alleged solicitations.[3] Once those customers have been identified, WWW shall provide discovery responsive to Interrogatory

---

[3] The Court notes that, while these discovery requests list certain business entities, the exact language is "including, but not limited to . . . ." (See, e.g., Docket #41 at 11). To the extent that Primarque seeks solicitations to other former customers it must identify those other customers.

No. 17 and Document Requests Nos. 10 and 23 until June 12, 2015. However, in the event that no solicitations have been captured in that ninety-day period as to any of the identified customers, WWW shall provide additional discovery of solicitations until December 31, 2015. In other words, the end-date for discovery is June 12, 2015 for each customer unless discovery up until that point shows no solicitation, in which case further disclosures of solicitations need to be made until December 31, 2015. This mechanism avoids unnecessarily duplicative or cumulative discovery on alleged solicitation breaches and minimizes the burden that would be imposed upon WWW to gather "every instance" of solicitation to "any customer" for that period as initially sought by Primarque.

With regard to attorney's fees, Federal Rule of Civil Procedure 37 provides that if a motion is granted in part and denied in part, then the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The Court DENIES both parties' requests for attorney's fees and costs.

IV.   CONCLUSION

For the foregoing reasons, the Motion to Compel Discovery (Docket #41) is GRANTED IN PART and DENIED IN PART as set forth in this Order.[4]

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[4] This Court believes that this matter is ripe for settlement. The parties are encouraged to contact the Court if they are interested in participating in alternative dispute resolution.