UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PRIMARQUE PRODUCTS CO. INC.,<br>Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>)<br>) | CIVIL ACTION<br>NO. 15-30067-TSH |
| | )<br>)<br>) | |
| WILLIAMS WEST & WITTS PRODUCTS COMPANY,<br>d/b/a INTEGRATIVE FLAVORS,<br>Defendant. | )<br>)<br>)<br>) | |

ORDER AND MEMORANDUM OF DECISION
March 26, 2019

**HILLMAN, D.J.**

**Background**

Plaintiff, Primarque Products Co. Inc. ("Plaintiff" or "Primarque") filed claims against Defendant, Williams West & Witts Products Company d/b/a Integrative Flavors ("Defendant" or "WWW") alleging claims for Breach of Contract (Count I), Promissory Estoppel (Count II), Intentional Interference with Business Relations (Count III), and violation of the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A ("Chapter 93A")(Count IV). WWW filed a counterclaim against Primarque alleging a claim for breach of contract (Count I). Prior to trial, this Court entered summary judgment against Primarque on its promissory estoppel and Chapter

93A claims, limited its breach of contract and intentional interference with business relations claims and entered judgment in favor of WWW on its counterclaim.

The matter went to trial and the jury entered judgment in favor of Primarque for $51,000 on its breach of contract claim and $204,000 on its tortious interference claim. This Memorandum and Order of Decision addresses the following motions: (1) Defendant/Counter-Plaintiff's Motion For Judgment Notwithstanding the Verdict, To Alter or Amend the Judgment, or Reduce the Awards (Docket No. 271); (2) Primarque Product Co., Inc.'s Motion To Alter or Amend the Judgment and to Award Costs (Docket No. 275); (3) Defendant's Motion For Disallowance and Objection to Plaintiff's Bill of Costs (Docket No. 277); and  (4) Primarque Products  Co., Inc.'s Motion to Strike the Defendant's "Supplemental Reply" Memorandum (Docket No. 285).[1]

## Discussion

### WWW's Motion for Judgment Notwithstanding the Verdict[2]

WWW requests that the Court enter judgement notwithstanding the verdict, or in the alternative to alter or amend the judgment by reducing the verdict as the jury's awards are against the manifest weight of the evidence.[3] In reviewing a motion for directed verdict, the Court examines 'the record in the light most favorable to the nonmovant and will reverse 'only if reasonable persons could not have reached the conclusion that the jury embraced' ". *Sindi v. El-Moslimany*, 896 F.3d 1, 13 (1st Cir. 2018).  At the same time, it is this Court's " 'duty to set aside

---

[1]  Primarque's motion to strike is ***denied***.

[2]  During the trial, WWW filed a motion for directed verdict (Docket No. 249) and Supplemental Motion for Directed Verdict (Docket No. 251). The Court never formally ruled on these motions, instead denying them implicitly when judgment was entered in Primarque's favor. I am today expressly denying the motions.

[3] WWW also requests that final judgment be entered on its counterclaim, together with prejudgment. interest.  For reasons stated later in this Order and Memorandum of Decision, I am denying Primarque's motion for offset.  Accordingly, WWW's motion for entry of judgment on its counterclaim, with prejudgment interest from the date of the filing of WWW's counterclaim (April 15, 2015) is granted without further discussion.

2

the verdict and grant a new trial if [it] is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice.' " *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 570 (1st Cir. 1987).

<u>Whether WWW is Entitled to Judgement Notwithstanding the Verdict on Primarque's Breach of Contract Claim</u>

In Ruling on WWW's motion for summary judgment prior to trial, this Court found that there was no binding written or oral agreement between the parties and therefore, WWW did not have an obligation to provide Primarque with 90 days' notice prior to terminating their distribution arrangement. *See Order and Memorandum of Decision*, dated March 29 2018 (Docket No. 171)("Prior Decision"). I further found that: "under Massachusetts law, distributorship agreements which do not expressly agree to a durational term are terminable at will by either party upon reasonable notice. Moreover, the reasonableness of the notice is measured in terms of the ability of the party affected by the termination to obtain a substitute arrangement. Damages in such cases are *limited to the "the time period of what constitutes reasonable notice.*" *Prior Decision*, at pp. 25-26 (internal citations, internal quotation marks and citation to quoted cases omitted)(emphasis in original). Finally, I found that "there is a disputed issue of material fact as to who breached the contract in the first instance—did Primarque breach the contract by surreptitiously moving business to other suppliers and/or attempting to replicate WWW's soup bases? Or, did WWW breach the contract by abruptly terminating the distributorship agreement without giving Primarque reasonable notice, that is, sufficient notice for Primarque to obtain a substitute supplier." *Id.*, at p. 27. As to this last issue, I noted that "under Massachusetts law, there exists an implied covenant of good faith and fair dealing implicit in every contract. The covenant provides that neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract … Actions which may not breach an

3

explicit contract provision may still breach the implied covenant of good faith and fair dealing where it was undertaken in bad faith, for example, or otherwise violated public policy." *Id.*, at p. 27 n. 6.

WWW asserts that because as part of its pretrial rulings this Court found that there was no written or oral agreement between the parties, as a matter of law, it was not required to give Primarque notice prior to terminating their distribution arrangements. WWW argues that the jury's verdict to the contrary cannot stand.  WWW further asserts that the jury's award of $51,000 is against the substantial weight of the evidence. In the alternative, WWW asserts that any obligation it had under Massachusetts law to provide reasonable notice of termination was excused because Primarque breached its obligations to WWW in the first instance by securing substitute arrangements with other suppliers, and by helping WWW's competitors replicate WWW' product lines— that is, Primarque was purchasing from and surreptitiously transitioning business to other suppliers without notifying WWW.

In ruling on WWW's motion for summary judgment, I found that there was no binding written or oral agreement between the parties. I then looked to Massachusetts statutory and common law to determine what rules governed the parties' relationship.  Ultimately, I found that the parties' relationship was governed by Mass.Gen.L. ch. 106, §2-309 (Absence of Specific Time Provisions; Notice of Termination) ("Section 2-309").   I did so despite the fact that Primarque had not asserted such a claim in its Amended Complaint.  For the following reasons, I do not find that this was error.  While Primarque did not assert a claim under Section 2-309 in its Amended Complaint, it did allege that WWW breached the covenant of good faith and fair dealing implicit in every contractual arrangement.

> '[T]he rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing.' Good faith and fair dealing in a

> distributorship agreement may be construed, by analogy, with reference to the Uniform Commercial Code. [Section] 2-309(3), provides that a contract which is terminable at the will of either party requires reasonable termination notice. Whether [a party's] termination notice constituted reasonable notice under commercial standards of good faith and fair dealing [is] a question … [for] the jury … .'

*Cherick Distributors, Inc. v. Polar Corp.*, 41 Mass. App. Ct. 125, 127, 669 N.E.2d 218, 220 (1996).

Accordingly, the Jury was instructed:

> If you find that the parties had an agreement under which the Defendant, WWW, would provide periodic shipments of goods to the Plaintiff, Primarque for an indefinite, but reasonable period of time, that contract may be terminated at any time by either party. However, any termination requires 'reasonable notification.' The Plaintiff claims that they were not given this reasonable notice. What is reasonable notice is measured in terms of the amount of time that will give the other party reasonable time to obtain a substitute arrangement, which in this case means whether Primarque had secured substitute arrangements. In this case, I am instructing you that reasonable notice would be a period not to exceed ninety (90) days.

The use of the term "agreement," in the first sentence, rather that the term "arrangement," was *perhaps* an unfortunate word choice. If so, it is an oversight which would not have influenced the jury's deliberations. Considering the instructions as a whole, I find that they properly stated Massachusetts law as it pertains to the parties' relationship.

WWW asserts that there was evidence before the jury that Primarque had other suppliers in place prior to WWW's termination of their arrangement. I agree. And based on this evidence, the jury *could* have found that (1) that WWW was not required to give any notice, or that the notice it gave was reasonable, or (2) that Primarque did not suffer any damage as the result of WWW's immediate termination of the parties' arrangement. However, viewing the record in the light most favorable to Primarque, I cannot find that reasonable persons could not have reached the conclusion that the jury embraced, that is, that WWW failed to give Primarque reasonable notice that it was terminating the distributorship arrangement, and as a result, Primarque was damaged. At the same time, I do agree with WWW that the $51,000 awarded by the jury cannot

5

stand.  As stated above, the Court instructed the jury that as a matter of law, that reasonable notice could not exceed 90 days.  Any damages must result from inadequate notice of termination as opposed to loss of business due to termination itself. *See RGJ Assocs., Inc. v. Stainsafe, Inc.,* 300 F. Supp. 2d 250, 253–54 (D. Mass. 2004). On the record, such damages, at most, equal  $39,017.00 for the 90 day notice period[4]. Therefore, the jury's breach of contract verdict shall be reduced to $39,017.00.

WWW also argues that the jury's verdict must be vacated because the evidence establishes that Primarque materially breached its obligations to WWW.  More specifically, WWW asserts that it was entitled to immediately terminate the parties' distributorship arrangement when it became aware that Primarque was surreptitiously transitioning business to WWW's competitors after assisting such competitors in duplicating WWW's product lines.  I agree that there is evidence to support WWW's position that Primarque's duplicitous conduct was a material breach of the parties' distributorship arrangement.  However, the jury disagreed. On this record, I cannot find that the jury's verdict is against the substantial weight of the evidence and therefore, am constrained to uphold it.

<u>*Whether WWW is Entitled to Judgement Notwithstanding the Verdict on Primarque's Tortious Interference Claim*</u>

WWW argues that it is entitled to judgment notwithstanding the verdict on Primarque's claim for tortious interference with advantageous business arrangements for the same reason that the jury's verdict on Primarque's breach of contract claim should be vacated, *i.e.*, WWW was not obligated to give Primarque notice of termination, and therefore, it was free to immediately contact Primarque's customers to solicit business upon terminating the parties' distribution

---

[4] Primarque in essence concedes that the $39,0717 is the actual amount of profits it lost during the 90 day period.  Primarque's attempt to nonetheless justify the $51,000 awarded by the jury is unavailing.

arrangement. Having rejected this argument in connection with WWW's motion to vacate the jury's verdict on its breach of contract claim, I am compelled to reject its argument as the jury's verdict on the Primarque's tortious interference claim.

*Whether the Jury Awarded Duplicative Damages on The Breach of Contract and Tortious Interference Claims*

The purpose of damages is to restore an injured party to the position it enjoyed before it was injury. Duplicate or overlapping damages are to be avoided. In this case, Primarque asserted that WWW unreasonably terminated the parties' distributorship arrangement without notice and as a result, it suffered damages in the form of profits it lost when it couldn't fulfill its obligations to its customers. It also alleges that WWW interfered with its advantageous business relations when it terminated the parties' distributorship arrangement, contacted its customers and entered supply arrangements with those customers. In other words, the customers who Primarque was not able to supply when WWW terminated their arrangement, were supplied by WWW. WWW argues that under these circumstances, damage awarded on the breach of contract claim are necessarily duplicative of the damages awarded on the tortious interference claim.

Primarque disagrees and argues that based on the amounts that the jury awarded for breach of contract ($51,000) and for tortious interference ($204,000), it is evident that the jury awarded damages for 90 days' lost profit on the former claim, and one years annualized lost profits on the latter claim. Primarque then suggests that the jury awarded it one year of additional lost profits over and above those it lost as a result of WWW's failure to give reasonable notice, for a total of 15 months of lost profits. I agree with Primarque that the breach of contract damages awarded by the jury represent 90 days' of lost profit and the tortious interference damages represent one year of lost profits. However, I disagree with Primarque that the damage awards do not overlap. Primarque acknowledges that the evidence establishes that upon

7

termination of their arrangement, WWW contacted Primarque's customers and immediately began to directly supply them with soup base. These are the same customers with whom Primarque alleged that WWW tortuously interfered. The lost profit damages for contract thus overlap with the tortious interference lost profit damages.

WWW's contention that recovery on both claims would result in Primarque receiving duplicative damages is best illustrated as follows: Primarque is asserting that it is entitled to breach of contract damages because it was unable to supply customer "X" with soup base because WWW terminated its arrangement without notice-- and therefore, it lost out on a sale to customer "X". At the same time, Primarque asserts it is entitled to lost profit damages it suffered when WWW interfered with this business relationship with customer "X" by contacting customer "X" and convincing it to immediately start buying directly from WWW—Primarque also assert that it lost business profits when customer "X" immediately began to purchase soup base directly from WWW. This is the essence of duplicative damages.

My finding that the damages are duplicative is bolstered by Primarque's own argument regarding how the jury could have arrived at $51,000 in damages when the evidence established actual damages of only $39,017: Primarque contends that the jury found annualized damages of one year (twelve months) on the tortious interference claim in the amount of $204,000 and then divided that amount by 4 to arrive at a figure of $51,000 for 90 days of lost profit on the breach of contract claim. I agree that this is likely how the jury arrived at an award of $51,000. In doing so, it is evident that the jury equated the two measures of damages and awarded them over the same time period, thereby ignoring my instruction that duplicative damages should not be awarded. Accordingly, I am vacating the breach of contract award of $51,000 (which I have reduced to $39,017).

<u>Primarque's Motion To Alter or Amend the Judgment and to Award Costs</u>

Primarque seeks to amend the Court's judgment so as to: (1) offset the amount awarded to WWW on its counterclaim, *i.e.,* reduce Primarque's judgment by the amount awarded to WWW; (2) award Primarque prejudgement interest; and (3) award Primarque its costs in the amount of $32,258.83. WWW opposes all of Primarque's requests.

*Primarque's Offset Request*

WWW opposes Primarque's request to the extent that Primarque is seeking to offset the amount the Court awarded WWW on summary judgment ($97,843.22) without accounting for the fact that the Court also awarded prejudgment interest. I agree with WWW. The Court's judgment clearly included prejudgment interest and Primarque's request for offset appears to be a blatant attempt to avoid paying the same. The offset request is denied.

*Primarque's Request for Prejudgment Interest*

The Court has vacated the jury's award on Primarque's breach of contract claim on the grounds that it was duplicative. Should Primarque choose to reinstate this award, *see* note 5, *infra,* it would be entitled to prejudgment interest on the reduced award of $39,017 from the date it commenced the suit. I so find because determination of the date of a breach or demand is determined by the factfinder. Primarque did not request an instruction that the jury find the date of breach or demand. Accordingly, prejudgment interest is granted, but only from the date of commencement of the action. *See DeSantis v. Commonwealth Energy Sys.,* 68 Mass. App. Ct. 759, 772, 864 N.E.2d 1211, 1221 (2007)(*i*f date of breach or demand is not established, prejudgment interest is calculated from date of commencement of the action. Establishing date of breach or demand is determination for the trier of fact, and, where trial has proceeded before

jury, neither the judge nor an appellate court can make such determination); *see also* Mass.Gen.L.ch. 231, §6C.

Under Massachusetts law, prejudgment interest on tort claims is awarded beginning at the time the action is commenced. *See* Mass. Gen. Laws Ch. 231 § 6B (In any action in which verdict is rendered for pecuniary damages for personal injuries to plaintiff or for consequential damages there shall be added by clerk of court to amount of damages interest from the date of commencement of action). "Prejudgment interest on damages is inappropriate, however, when damages are awarded to compensate for future losses." *Casual Male Retail Grp., Inc. v. Yarbrough*, 527 F. Supp. 2d 172, 181 (D. Mass. 2007). In this case, Primarque alleged that WWW, upon termination of the parties' distributorship arrangement, immediately contacted its customers and entered arraignments to supply them directly. According to the record evidence, this occurred on or about March 12, 2015. Primarque commenced this action 7 days later, on March 19, 2015. From the evidence at trial, it is clear that substantially all of the damages on this claim occurred after the suit was filed. While it is not clear from the jury's verdict form at what point they were awarding damages, reading the verdict as a whole, it is evident that the jury was awarding future damages. Under these circumstances, prejudgment interest is generally not awarded. *See Id.,* at 181 and case cited therein. Likewise, I find that prejudgment interest is not warranted in this case.[5]

---

[5] I have determined that the jury's award constituted duplicative damages and assumed that Primarque would choose to accept the judgment for tortious interference, in the amount of $204,000, without prejudgment interest. If instead, Primarque would rather accept the breach of contract damages, in the amount of $39,017 plus prejudgment interest from the date it commenced this action, it should file a motion to amend judgment on or before April 4, 2019.

*Primarque's Request for Costs; Defendant's Motion For Disallowance and Objection to Plaintiff's Bill of Costs (Docket No. 277)*

Primarque has requested costs in the amount of $32, 258.83, broken out as follows:

| | |
|---|---:|
| -Fees of the Clerk | $280.00 |
| -Fees for printed or electronically recorded transcripts necessarily obtained for use in the case: | $10.578.83 |
| -Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case: | $21,400.00 |
| TOTAL: | $32,258.83 |

WWW has filed a motion for disallowance on the grounds that some of the claimed costs are not taxable under 28 U.S.C. § 1920 and/or the claimed amounts are unreasonable and, therefore, must be reduced. More specifically, WWW objects to Primarque's attempt to tax the cost of deposition transcripts of witnesses it did not call at trial and its attempt to tax the expense of engaging a trial graphics professional to attend trial and advance slides. As to the latter, WWW argues that trial graphics presented by Primarque and the use of a graphic's expert to present such graphics at trial were not necessary for Primarque's presentation of its case or for the jury to understand the evidence.

Primarque seeks to be reimbursed for the deposition transcripts of numerous witnesses from the State of Indiana, which is beyond this Court's Subpoena power.  Two of the witnesses (WWW's principles) testified at trial and one witness's deposition (WWW's former owner) was read at trial.  While the remaining witnesses did not testify at trial, Primarque did cite to their deposition testimony in its opposition to WWW's motion for summary judgment. Therefore, I find that all of the costs of the deposition transcripts were reasonably necessary and are reimbursable. I further find that the remaining trial transcripts for which Primarque seeks reimbursement were

reasonably necessary, and therefore, the entire amount of $10, 578.83 it seeks for this category of costs is taxable.

Primarque hired Win Interactive, Inc. ("Win") to provide a number of services which it alleges greatly assisted the jury in understanding the evidence in this case. More specifically, Win copied Primarque's trial exhibits, reduced them to an electronic image and was on hand in the courtroom to display such images to the Court and jury. Moreover, Win created some illustrative chalks which Primarque used in its case.  Win charged Primarque $21,400 for its services. This was a fairly straightforward case that did not require complicated or sophisticated graphics.  This Court regularly holds hearings and trials in which exhibits and graphics similar to and more sophisticated than those utilized by Primarque are presented to the judge and jury without the necessity of "trial technician" to operate the computer at a cost of $200 per hour. Moreover, I agree with WWW that a significant amount of the graphics and chalks utilized by Primarque in this case were of limited assistance to the jury.  Because I find that the majority of services provided Win for which Primarque seeks reimbursement were not reasonably necessary, I am reducing the amount of taxable costs sought for Win's services to $5,000.

Primarque's request for costs and WWW's motion for disallowance of costs are each granted, in part, and denied, in part.  Primarque is entitled to recover costs in the amount of $15,858.83.

## Conclusion

1. Defendant/Counter-Plaintiff's Motion For Judgment Notwithstanding the Verdict, To Alter or Amend the Judgment, or Reduce the Awards (Docket No. 271), us ***granted***, in part and **denied**, in part:

a. The verdict in Primarque Products Co. Inc.'s favor on Count I (Breach of Contract) shall stand, but the damages which I have reduced to $39,017.00 as provided in this Order and Memorandum of Decision, are hereby vacated, as duplicative. Accordingly, judgement shall enter for Primarque Products Co. Inc. in the amount of $204,000.00 on Count (III); and

b. Judgement shall enter for Williams West & Witts Products Company d/b/a Integrative Flavors on its counterclaim in the amount of $97,843.22, plus prejudgment interest from April 15, 2015.

2. Primarque Product Co., Inc.'s Motion To Alter or Amend the Judgment and to Award Costs (Docket No. 275) is ***granted***, in part and ***denied***, in part, as provided in this Order and Memorandum of Decision. Accordingly:

a. Primarque Products Co. Inc. is not entitled to prejudgment interest on its judgment of $204,000; and

b. Primarque Products Co. Inc. is entitled to recover costs in the amount of $15,858.83.

3. Defendant's Motion For Disallowance and Objection to Plaintiff's Bill of Costs (Docket No. 277) ***granted***, in part and ***denied***, in part, as provided in this Order and Memorandum of Decision; and

4. Primarque Products Co., Inc.'s Motion to Strike the Defendant's "Supplemental Reply" Memorandum (Docket No. 285) is ***denied***.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**